SLAPP, APPELLEE AND CROSS-APPELLANT, *v.* SLAPP, APPELLANT AND CROSS-APPELLEE.

(No. 3560—Decided April 26, 1943.)

*Messrs. Bailey & Bailey,* for appellee and cross-appellant.

*Mr. Scott A. Belden* and *Mr. Robert Guinther,* for appellant and cross-appellee.

STEVENS, P. J. This is an appeal by the defendant in the trial court on questions of law. Plaintiff therein has also filed a cross-appeal.

On November 2, 1939, plaintiff, Ruth E. Slapp, filed in the Court of Common Pleas her petition for permanent and temporary alimony against the defendant, Maurice F. Slapp. Summons and a copy of the petition were duly served upon the defendant. On November 6, 1939, the court, after hearing, ordered temporary alimony in the amount of $152.67 to be paid monthly by defendant to plaintiff, and those payments were made by defendant.

On June 11, 1942, Ruth Slapp filed an amended petition, wherein she sought not only alimony but also a divorce from defendant. Defendant filed a motion to strike the amended petition from the files for want of jurisdiction in the court to grant the relief sought, which motion, after hearing, was overruled.

On June 20, 1942, defendant answered, setting out that on April 22, 1942, he had filed an action in the District Court at Reno, Nevada, wherein he sought a divorce from the plaintiff. Service by publication was secured, and a copy of the petition and a summons were also handed to Mrs. Slapp in Akron. She entered no appearance in the Nevada case.

On May 25, 1942, said District Court at Reno, Nevada, granted to Maurice F. Slapp an absolute divorce, but expressly found that there was no community property belonging to plaintiff and defendant subject to the order of said court in Nevada, and did not attempt to make any order as to the property of the parties.

Maurice F. Slapp remarried on May 26, 1942, at Reno, Nevada, and within a short time returned to Akron, Ohio.

Plaintiff replied, alleging that the Nevada divorce was null and void because defendant never became in good faith a resident of Nevada, and for the further reason that the decree of divorce was fraudulently obtained.

Upon hearing, the trial court found that the divorce decree procured by the defendant in Nevada was null and void; that plaintiff was entitled to a divorce and alimony, and entered judgment upon its finding.

Two errors are assigned by the appellant:

1. That the court erred in overruling defendant's motion to strike the amended petition from the files (a) because of failure of plaintiff to make a prepayment of costs and (b) when it was made to appear

that a divorce had already been granted by the Nevada court.

2. That the court erred in making an equitable division of the property.

On the question of a deposit for costs, the record discloses that at the time plaintiff's petition for alimony was filed, she made the required cost deposit of $15.35 with the clerk of courts.

It is urged, however, that, when she amended her petition so as to include a prayer for divorce, she was required to make an additional cost deposit; and that, having failed to make any additional deposit, the trial court was without jurisdiction to entertain the petition for divorce and should have dismissed the same upon defendant's motion therefor.

Section 11981, General Code, provides for the prepayment of costs in divorce or alimony actions as follows:

"No clerk of a court of common pleas shall receive or file a petition for divorce or alimony until the party named as plaintiff therein, or some one on his or her behalf, makes prepayment or deposit with the clerk of such an amount as will cover the costs likely to accrue in the action exclusive of attorney fee, or gives such security for the costs as in the judgment of the clerk is satisfactory; but when a plaintiff makes affidavit of inability either to prepay or give security for costs, the clerk shall receive and file the petition. Such affidavit shall be filed with it, and treated as are similar papers in such cases."

The plaintiff having made the required and customary deposit for costs at the time of filing her action for alimony, there was no statutory requirement for an additional deposit when she amended her petition so as to include a prayer for divorce. Had she originally filed a divorce and alimony action, the deposit made would have sufficed to conform to the stat-

ute. The accomplishment of that result by amendment did not change the situation. No further deposit for costs was necessary under the statute. We find no error in the court's ruling on the subject of costs.

As to the court's ruling with reference to dismissing the amended petition praying for divorce when it was made to appear that defendant had already obtained a decree of divorce in Nevada, a recent decision of the Supreme Court of the United States changes the credit to be attached to such a decree and makes necessary a reversal of that part of the trial court's judgment granting a divorce to plaintiff.

The law on the question of the faith and credit to be given to a decree of divorce granted in a state other than the place of the matrimonial domicile was established by the Supreme Court of the United States in the case of *Haddock* v. *Haddock,* 201 U. S., 562, 50 L. Ed., 867, 26 S. Ct., 525, and the rule therein announced continued in force from 1906 up to December 21, 1942. On this latter date the case of *Williams* v. *North Carolina,* 317 U. S., 287, 87 L. Ed., 189, 63 S. Ct., 207, 143 A. L. R., 1273, was decided by the Supreme Court of the United States, and by that decision the *Haddock case, supra,* was expressly overruled. The sixth paragraph of the syllabus of *Williams* v. *North Carolina* is as follows:

"Under the full faith and credit clause and the act of May 26, 1790, where a decree of divorce, granted by a state to one who is at the time *bona fide* domiciled therein, is rendered in a proceeding complying with due process, such decree, if valid under the laws of that state, is binding upon the courts of other states, including the state in which the marriage was performed, and where the other party to the marriage was still domiciled when the divorce was decreed. *Haddock* v. *Haddock,* 201 U. S., 562, overruled."

The record in the instant case shows, by the express finding of the Nevada court, that the defendant acquired a *bona fide* domicile in that state in accordance with the laws of Nevada. Hence, under the pronouncement by the Supreme Court of the United States, the judgment of the Nevada court was entitled to full faith and credit in the courts of Ohio, in conformity to the requirement of Section 1, Article IV, U. S. Constitution. It was accordingly the duty of the trial court in this case to deny the prayer of plaintiff's petition for divorce, when it was made to appear that defendant had procured a decree of divorce, valid under the laws of the state of Nevada; and in refusing so to do, the trial court erred.

The next claim of appellant is that the court erred in making an equitable division of the property of the parties. This claim, of course, has to do with the question of the authority of the court to grant alimony to the plaintiff.

Alimony for a wife is of two kinds: That which is allowed under Sections 11997 and 11998, General Code, in pursuance of an action for alimony alone; and that which is allowed under Sections 11990 and 11991, General Code, as an incident to the granting of a divorce to the wife because of the husband's aggression.

The record in the instant case contains evidence which, had it not been for the procurement by the defendant of the Nevada decree of divorce, would have required the trial court to grant a divorce to the plaintiff, and would have warranted the trial court in making an allowance of alimony as an incident to the granting of that divorce because of the husband's aggression.

The case which was tried was one for divorce and alimony—not an action for alimony alone. Had the action been for alimony alone, the court, under the

pronouncement of the Supreme Court of Ohio in *Durham* v. *Durham,* 104 Ohio St., 7, 135 N. E., 280, would have been limited "to making an award as alimony for her maintenance and support during separation," and would not have been authorized to make an equitable division of the husband's property. Inasmuch, however, as the action was one for divorce and alimony, wherein it appeared that the defendant husband had procured a divorce in another state without service other than by publication, the rule announced by the Supreme Court of Ohio in *Doerr* v. *Forsythe, Admx.,* 50 Ohio St., 726, 35 N. E., 1055, 40 Am. St. Rep., 703, with reference to the property of the parties, pertains. That rule is as follows:

"A divorce obtained by a husband from his wife in another state, without service other than by publication, and she being at the time a citizen of and residing in this state, does not in any way affect her property rights in this state."

While the trial court was foreclosed from granting a divorce to the wife when it was made to appear that the husband had already procured a divorce in Nevada, yet, the evidence being such that the trial court would have been warranted in granting the wife a divorce for the husband's aggression but for the Nevada decree, we hold that the court was empowered, under the appropriate statutes (Sections 11990 and 11991, General Code) to allow the wife such alimony out of her husband's property "as it deems reasonable."

Were the action confined to an allowance under Section 11998, General Code, the decision of the Supreme Court in the *Durham case, supra,* construing the meaning of that statute, would have necessarily limited the award to one as alimony for the maintenance and support of the wife during separation; but in this case the separation between plaintiff and defendant was

permanently terminated by the defendant's activity in procuring a divorce from the plaintiff, and if the trial court were limited to an award of alimony for the maintenance and support of the wife during separation, the court would have been foreclosed from making any allowance to the wife, because there was no longer a separation. The marriage status no longer existed, because of the granting of the Nevada divorce decree. Certainly such an unconscionable and inequitable result could not have been intended by the decision in the *Durham case, supra.*

We hold that, where a husband procured a divorce in another state upon constructive service, in a case where the foreign court found that it had jurisdiction, the wife not entering her appearance in said foreign jurisdiction, such foreign divorce, when proved, precludes the granting of a divorce to the wife by a court in Ohio upon her petition therefor. However, if the evidence is such as would have warranted the Ohio court in granting a divorce to the wife because of the husband's aggression, the court has authority to deal with the property of the parties as though it had granted a divorce to the wife because of the husband's aggression, and, in so doing, may divide such property between the parties, if that be deemed reasonable.

In *Stephenson* v. *Stephenson,* 54 Ohio App., 239, 6 N. E. (2d), 1005, the court held that, even after the granting of a domestic decree to the wife upon constructive service, the right of the wife to alimony continues until adjudication. That case, of necessity, dealt with the subject of alimony as an incident to the granting of a divorce because of the husband's aggression, and did not treat of an action for alimony only, because there, the divorce having already been granted to the wife for the husband's aggression, the separation between the parties was terminated and the mar-

riage status destroyed, and the only power which the court could then have would be that of granting to the wife alimony as an incident to the divorce.

See, also, *Wick* v. *Wick,* 58 Ohio App., 72, 15 N. E. (2d), 780.

The rule announced by the foregoing cases need be amplified but little to provide that, after the granting of a foreign divorce decree to a husband, the right of the wife to alimony as an incident to a divorce because of the husband's aggression remains until adjudicated, and that, upon proper evidentiary showing, the court may award such alimony out of the husband's property "as it deems reasonable"—even to the extent of a division of the property of the parties, although it is precluded from granting a divorce to the wife by reason of the previously procured foreign divorce granted to the husband.

Under the circumstances presented by this record, the severance of the marital tie by the husband through the procurement of a foreign divorce should be considered as an aggression on his part, for the purpose of allowing alimony to the wife.

It is next claimed that the court erred in its order directing that certain stocks in the Akron Lamp Company and Radiant Products, Inc., be divided or sold, by reason of said stocks having been pledged to others under what is known as a junior executive's agreement.

We have examined that agreement, and find that the stocks concerning which complaint is made were not pledged, but that an option upon said stocks had been granted, said option being conditioned upon the termination of the owner's connection with the Akron Lamp Company; otherwise the option could not be exercised by the optionee.

We find no merit in the appellant's contention in this respect, nor do we find the claim of the appellant

that the amount of alimony awarded was too large to be borne out by the evidence.

We are of the opinion that, so far as the award of alimony is concerned, the judgment of the trial court should be affirmed; that, as to the granting of a divorce to the plaintiff below, that part of said judgment must be reversed.

We find no merit in the claims of error set out in appellee's cross-appeal.

The judgment is reversed in part and affirmed in part, as herein indicated.

*Judgment accordingly.*

WASHBURN and DOYLE, JJ., concur.