Argued February 6; affirmed March 6, 1945

# CHANEY *v.* CHANEY

(156 P. (2d) 559)

Before Belt, Chief Justice, and Rossman, Bailey, Lusk, Brand and Hay, Associate Justices.

*Wallace Smith,* of Portland (Kneeland, Smith & Pipes, of Portland, on the brief), for appellant.

*Frank H. Hilton,* of Portland, for respondent.

HAY, J.

This is an appeal from an order of the circuit court for Multnomah County, denying a motion by defendant-appellant to set aside a decree of divorce, which was entered against her by default.

The complaint, based upon alleged cruel and inhuman treatment, was filed August 10, 1943. The parties have one child, a daughter aged about three and a half years, and plaintiff sought her custody. Personal service of summons and complaint were made upon defendant in Multnomah County on August 11, 1943, and default decree was entered September 24, 1943. On September 20, 1943, the parties entered into a written agreement in the nature of a property settlement, the provisions of which were later embodied in the decree.

The motion to set aside the decree, based upon the ground that it was taken against defendant through her excusable neglect, was filed February 25, 1944. It was supported by defendant's affidavit, stating in effect, that she had a good defense to the plaintiff's suit, and a good cause of suit against him for divorce; that her sole reason for suffering default to be taken against her was that she had been intimidated by the plaintiff, who threatened to kill her if she resisted the suit or attempted to obtain legal custody of the child; that such intimidation, and the fear induced thereby, "existed at the time the Decree was obtained and has continued ever since"; and that she was enabled to overcome her fear sufficiently to file the motion only

by her desire to promote her child's welfare. The affidavit states further that the property settlement was entered into by her under intimidation by plaintiff, and was without consideration. She tendered, with the motion, an answer to plaintiff's complaint, and a cross-complaint whereby she sought a decree of divorce in her favor, with custody of the child.

Under the law of Oregon, the court may, in its discretion, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. Section 1-1007, O. C. L. A. This section has been made applicable to suits in equity by section 9-107, O. C. L. A. See *Travelers Ins. Co. v. Staiger*, 157 Or. 143, 69 P. (2d) 1069; *Carmichael v. Carmichael*, 101 Or. 172, 199 P. 385.

■ It is settled law that the fact that a judgment has been obtained by duress is a sufficient reason why, upon timely application, it should be set aside. 31 Am. Jur., Judgments, section 740.

■ In addition to defendant's affidavit, the court heard testimony of witnesses in support of and against the motion, including the testimony of the parties themselves. The defendant testified at considerable length concerning acts of cruel and inhuman treatment toward her, of which she claimed plaintiff had been guilty. We have read the transcript of testimony with care. In our opinion, defendant failed to make a sufficient showing to have justified the court in setting aside the decree. Much of her testimony, we think, was inherently improbable. Despite her contention that fear of her husband prevented her from contesting the divorce suit, her testimony shows that, prior to the time when summons and complaint were served upon her,

she herself had actually consulted an attorney for the purpose of having him bring suit for divorce on her part. Both plaintiff and defendant were working in a shipbuilding yard in Portland, although plaintiff was opposed to his wife's so working. There is in evidence a letter, written by defendant to a woman friend (but not posted), in which, among other matters, she stated that she intended to pack her things and move out while her husband was working, and thought she would "have the papers slapped on him" and go down to the beach for the week-end "away from everything". This letter is dated July 23, 1943, and, although defendant did not actually leave plaintiff's home until August 7, 1943, the letter indicates that, for some time, she had contemplated leaving him. The fact that she consulted an attorney with the idea of bringing suit for divorce is some evidence that she was not afraid of her husband. Moreover, evidence respecting her conduct during the marriage (details of which it is unnecessary to relate) shows that her husband's efforts to control her unconventional behavior had no effect upon her. After defendant abandoned plaintiff, leaving the child with him, he engaged the services of a lady, who was the mother of a fourteen-year old boy, to keep house for him and care for his child. She and her son lived in the plaintiff's home while she was so employed, a period of about two months. During all of that time, the defendant telephoned to plaintiff every evening. She would call "three or four times in the evening and talk and talk and talk". On several occasions, although the housekeeper was not acquainted with Mrs. Chaney, the latter called her on the telephone and accused her of "living with" Chaney, and finally, by those means, made matters so uncomfortable for her that she was obliged to quit her employment.

Since the divorce, the defendant has seen the child only twice or thrice a month, according to her own testimony, and has not attempted to see her more frequently. Her practice was to telephone Mr. Chaney that she wished to see the child, whereupon she would either call at Mr. Chaney's home for the child, or he would bring it to her, whichever was more convenient. We think that the fact that she kept Mr. Chaney advised of her whereabouts, and, by her own arrangements, brought him into contact with her, tends further to refute her claim that she was afraid of him.

■ Mrs. Chaney insists that the one-sided nature of the property settlement confirms her claim that she acted under duress. The agreement was drawn by her own attorney. By its terms, Mrs. Chaney was permitted to "take so much of the furniture and furnishings now owned by plaintiff and defendant * * * as she may have, in good conscience, need of, being mindful of the needs of plaintiff in such furniture and furnishings." She agreed to transfer to plaintiff a 1941 Chevrolet coupe, title to which stood in the names of both parties, and to quitclaim to him a small lot of land upon which the family dwelling-house was situated. She agreed further that her husband should have the exclusive custody of the child. Chaney assumed all the outstanding family debts, which amounted to some $800, agreed to support the child, and to pay a fee of $75 to Mrs. Chaney's attorney. The family debts and the attorney's fee have been paid. Superficially, the settlement appears to be more favorable to plaintiff than to defendant. However, while the evidence does not show what the house property is worth, it does show that it was purchased in August, 1942, with a down payment of only $250. The automobile was being purchased on

the installment plan. Mrs. Chaney complains that she has not received such portion of the furniture and furnishings of the home as she desired. It appears, however, that she was permitted to retain a key to the premises, and she admitted that she could have gone there and taken whatever personal property she wanted. The parties dealt at arm's length in relation to the settlement. Each was represented by an attorney. Mrs. Chaney's attorney, as stated, actually drew the agreement. It was executed by her in her attorney's office, in the presence of her attorney and his secretary. Mr. Chaney was not present. Under those circumstances, we may assume, in the absence of satisfactory evidence to the contrary, that the terms of the agreement were not unfair to her.

It is but natural that defendant should desire to have custody of her child. Her own testimony indicates, however, that, during the marriage, she preferred, against her husband's wishes, to work in the shipyard (at high wages) rather than stay home and give the child a mother's care; that she voluntarily left the child with Mr. Chaney when she separated from him; and that, in her father's custody, the little girl is receiving "fine care". Mrs. Chaney appears to have had free access to the child to the extent that she desired. At the time of the hearing on the motion, she was still working in the shipyard, and it is not apparent that the child's welfare would be promoted by a change of custody.

■ In any event, the question before the court was simply whether or not defendant was entitled, by reason of duress, to have the decree set aside. The court having denied the motion, the matter of custody of the child must stand as determined by the decree.

■ The trial judge had the advantage of seeing and hearing the witnesses, and, for that reason, his findings in the premises carry considerable weight with this court. We are of the opinion that, under the evidence adduced upon both sides, he exercised his discretion wisely in refusing to set the decree aside. The order appealed from is affirmed, without costs to either party.