Argued October 7, affirmed November 24, 1965, petition for
rehearing denied January 18, 1966

# PEAKE *v.* PEAKE

408 P. 2d 206

*Gunther F. Krause,* Portland, argued the cause for appellant. With him on the briefs were Jerard S. Weigler and Krause, Lindsay & Nahstoll, Portland.

*Philip A. Levin,* Portland, argued the cause for respondent. On the brief were Robert M. Mulvey, Oregon City, and Theodore S. Bloom, Portland.

Before McAllister, Chief Justice, and Perry, Denecke, Lusk and Schwab, Justices.

SCHWAB, J. (Pro Tempore).

This is an appeal by Juanita Peake (now known as Juanita George) from an order denying in its entirety a motion to set aside or in the alternative a motion to modify a decree of divorce obtained by her former husband, Leslie Peake.

The record is incomplete due in part to the fact that the appellant, Juanita Peake, apparently did not present, or at least abridged, her evidence in support of her alternative motion to modify the decree and in part to the fact that the trial judge ruled on the motion in its entirety after hearing only evidence offered by Juanita Peake. However, the following relevant facts appear to be undisputed.

For some years prior to the break-up of the marriage the parties lived in Oregon with their two minor children. On February 17, 1963, Mrs. Peake took the two children and went to Nevada. On June 13, 1963, Mr. Peake filed suit for divorce in Clackamas county and on June 17, 1963, summons was served on Mrs.

Peake in the state of Nevada. Mrs. Peake made no appearance in this suit and on August 16, 1963, in an ex parte proceeding, Mr. Peake was given a decree of divorce and custody of the minor children.

During the period from February to August, 1963, Juanita Peake was also engaged in legal activities. On February 4, 1963, Juanita Peake filed suit for divorce in Multnomah county and obtained a restraining order.[1] Four days later Leslie Peake filed an answer and obtained an order changing the venue to Clackamas county. On March 29th, which was over a month after she had left the family home for Nevada, Mrs. Peake caused to be served on Mr. Peake an order directing him to appear before the Clackamas county court on April 15th to show cause why he should not pay support money pendente lite to Mrs. Peake. Mrs. Peake testified that she did not come to Clackamas county for the scheduled pendente lite hearing because a snow storm in Nevada had made the roads impassable. On April 19, 1963, the suit for divorce filed in Oregon by Juanita Peake was dismissed on her motion. In July of 1963, through the district attorney of Washoe County, Nevada, she commenced proceedings for child support under the Uniform Reciprocal Enforcement of Support Act. This resulted in a citation being served on Leslie Peake requiring him to appear in the Clackamas county court. The Clackamas county court dismissed the reciprocal proceedings on August 16, 1963, the day it granted Leslie Peake a decree of divorce and custody of the children.

After she dismissed the divorce suit which she had filed in Oregon and after she had been served with

---

[1] The Oregon attorney who represented Mrs. Peake in connection with the divorce case she filed is not her present counsel who were retained in the spring of 1964.

summons in the divorce suit filed in Oregon by Leslie Peake, Juanita Peake, on September 5, 1963, filed a complaint for divorce in Nevada. The Nevada decree was not proven by production of a certified copy thereof in the manner provided by ORS 43.110, but her testimony was that it was entered on October 10, 1963 and granted her a decree of divorce and custody of the children. On the same day, October 10, 1963, Mrs. Peake married David George in Nevada and subsequently the Georges moved with the children to California and continue to live outside the state of Oregon. It appears from Mrs. Peake's testimony that while the case at bar was pending she had consulted with an Oregon lawyer, a Nevada lawyer, and the district attorney of Washoe County, Nevada.

On July 17, 1964, Juanita Peake filed a motion for an order vacating the decree of divorce obtained by Leslie Peake and permitting her to file an answer and cross-complaint.

The first assignment of error is that the trial court erred in failing to vacate the decree in its entirety and in failing to permit her to file an answer and cross-complaint.

ORS 18.160 provides that:

> "The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

■ The action of the trial court in refusing to set aside a decree will not be reviewed except for a manifest abuse of discretion. *Day v. Day,* 226 Or 499, 500, 359 P2d 538. "Aside from legislation, the courts will

hear motions to vacate divorce judgments on the same grounds and conditions as any other judgments, except perhaps that they proceed with greater caution and with more anxious care for the intervening rights of strangers." 1 Black, Judgments § 320, cited in *Carmichael v. Carmichael,* 101 Or 172, 178, 199 P 385. To the same effect, "There are excellent reasons why judgments in matrimonial causes, whether of nullity or divorce, should be even more stable, certainly not less, than in others, and so our courts hold," 2 Bishop, Marriage and Divorce § 1533.

■ The facts recited above are evidence contrary to her position that the default decree was occasioned by fear of her former husband so great that it effectively prevented her from making an appearance in the case. *Chaney v. Chaney,* 176 Or 203, 206, 156 P2d 559. The trial court did not abuse its discretion in denying the motion to vacate the decree.

■ We turn next to Juanita Peake's fourth assignment of error to the effect that the court should have modified the decree by making an equitable distribution of property under the provisions of ORS 107.100 (1) (c)[2] and ORS 107.130 (1).[3] She argues, in effect,

---

[2] "107.100.  (1) Whenever a marriage is declared void or dissolved, the court has power further to decree as follows:
"*  *  *  *  *
"(c) For the recovery from the party at fault or, under unusual circumstances in the discretion of the court, from the party not at fault, such amount of money, in gross or in instalments, or both, as may be just and proper for such party to contribute to the maintenance of the other; * * *."

[3] "107.130.  (1) The court, or judge thereof, has the power at any time after a decree is given, upon the motion of either party, to:
"(a) Set aside, alter or modify so much of the decree as may provide for the appointment of trustees, for the support and custody of minor children, for the nurture or education thereof, or both, or for the maintenance of either party to the suit; and
(b) * * *."

that she should have received a property settlement but did not and that, therefore, the trial court should broadly construe the cited statutes and modify the decree so as to provide her with maintenance by means of a distribution of property. Here there is nothing to modify by way of maintenance in the decree, whether it is called "alimony" or a "division of property." This court, in quoting from *Howell v. Howell,* 104 Cal 45, 37 Pac 770, said:

> "* * * 'In the case at bar the judgment became final without any award of alimony, and, of course, the court could not afterwards "modify" what never existed.'" *McFarlane v. McFarlane,* 43 Or 477, 483, 73 Pac 203, 75 Pac 139.

Accord, *Rodda v. Rodda,* 185 Or 140, 200 P2d 616, 202 P2d 638, cert. denied, 337 US 946, 69 S Ct 1504, 93 LEd 1749.

■ Juanita Peake's other two assignments of error are that the trial court should have vacated that portion of its decree awarding custody because it had no jurisdiction to award custody of minor children physically out of the state and that it erred in failing to modify the decree so as to require Leslie Peake to pay to Juanita Peake support money on behalf of the minor children. The custody and child support issues are not properly before this court. The hearing on the motion commenced at 10:00 a.m. on August 17, 1964. The first two hours were devoted to testimony from Mrs. Peake and her witnesses on the issues of whether the entire decree should be set aside. At noon, the following colloquy took place:

> "MR. KRAUSE: Your Honor, it is five minutes to twelve—do you wish to continue or shall we call our next witness?

"THE COURT: Well, how many more witnesses do you have, Mr. Krause?

"MR. KRAUSE: I believe we are going to call two more, two more, your Honor and they are very short.

"THE COURT: How many do you have, Mr. Mulvey or Mr. Bloom?

"MR. BLOOM: Four and I think they are quite short, perhaps five.

"THE COURT: Well, I have a problem. I have a case that I was trying Friday involving this labor dispute and I have set the argument on this case for 1:30 this afternoon.

"MR. KRAUSE: If I may make a suggestion, your Honor, the only thing that is of urgency is the motion to vacate and set aside the judgment. I think if we could just proceed with the testimony on that issue alone I can't see that a little delay on the custody problem, modification of the decree would cause any great harm, if it is not too long a time. If we could limit our witnesses to that one issue we could dispose of it very shortly.

"THE COURT: I have to finish by 1:30, which it is not too likely or continue this after I hear the other argument this afternoon. I have no idea how long those fellows will argue, I suppose about an hour or more.

"MR. MULVEY: All of our witnesses will be directed to this question of whether or not there was fear and intimidation, not to any other point whatsoever."

The additional two witnesses referred to were then called by Mrs. Peake's counsel. Their testimony was not relevant to the custody issue. The trial court then ruled denying Mrs. Peake's motion in its entirety without permitting counsel for Mr. Peake to offer any evidence. For us to assume from the state of the rec-

ord that either party had fully presented his relevant evidence on the issues relating to custody and child support would be to indulge in speculation. Further, by her assignment of error dealing with the jurisdiction of the trial court to make an award of custody, Mrs. Peake seeks to raise an issue in this court not directly raised by her motion which framed the issues in the court below. This issue was at most alluded to only indirectly by Mrs. Peake's assignment of it as a ground for her motion seeking to have the decree set aside in its entirety. The trial judge volunteered a comment during the proceedings indicating that he recognized a serious question as to the jurisdiction of the court to make an award of custody but doubted that the motion brought the issue before the court for decision.

The law relative to jurisdiction of courts to make custody decrees is in a state of flux. *May v. Anderson,* 345 US 528, 73 S Ct 840, 97 L Ed 1221 (1953); Hazard, May vs. Anderson: Preamble to Family Law Chaos, 45 Va L Rev 379. Decisions of various jurisdictions including our own, offer various alternatives on this complex issue. Certain of these alternatives make relevant the evidence which both parties might have produced but did not present, others do not. In any event, we will not consider these alternatives here. The jurisdictional issue was not properly raised and is not ripe for decision because the record indicates that all of the pertinent evidence may not be before us. Accordingly, the ruling of the trial court is affirmed without prejudice to the rights of either party to institute further proceedings on the custody and child support issues. Costs to neither party.